IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| ANTONIO AGUIRRE VILLA, | |
| Petitioner, | CIVIL ACTION NO.: 5:25-cv-89 |
| v. | |
| WARDEN TONY NORMAND, et al., | |
| Respondents. | |

## ORDER AND REPORT AND RECOMMENDATION

Petitioner filed a Petition for Writ of Habeas Corpus and Complaint for Declarative and Injunctive Relief under 28 U.S.C. § 2241. Doc. 1. Petitioner filed an Amended Petition, doc. 15. Respondents filed Motion to Dismiss, doc. 16, and a Response, doc. 28. Petitioner filed a Reply, doc. 37. The Court held a hearing on October 28, 2025, at which the parties presented oral argument. The Petition is ripe for review. For the following reasons, I **RECOMMEND** that that the Court **GRANT in part** the Amended Petition and **DENY** Respondents' Motion to Dismiss. I **RECOMMEND** that the Court order Respondents to release Petitioner subject to the previous bond order, entered on July 25, 2025, or release Petitioner without conditions. Additionally, given the unique circumstances of this case and the issue presented, I **ORDER** any objections to be filed **no later than 3:00 p.m. EST, on November 7, 2025**.

## BACKGROUND

Petitioner Antonio Aguirre Villa is a citizen of Mexico. Doc. 1 at 5. He entered the United States in 2009. Id. He first came into Immigration and Customs Enforcement ("ICE") custody on October 3, 2011, and was released that same day. Doc. 16-1 at 1. Proceedings

against him were administratively closed on November 29, 2011.  Doc. 1 at 5.  On June 24, 2025, Petitioner was arrested in Gainesville, Georgia, for driving without a license.  Id. at 6.  He was placed in ICE custody on June 26, 2025.  Doc. 16 at 2.  He was transferred to the Folkston ICE processing center on July 9, 2025.  Id.

On July 7, 2025, Petitioner, through counsel, filed a Motion for Custody Redetermination before the Immigration Court.  See Doc. 1-1 at 2.  On July 14, 2025, the Immigration Judge ("IJ") granted the motion and ordered Petitioner's release upon posting of a $10,000 bond, finding that he is neither a danger to the community nor a flight risk.  See Doc. 28-1 at 96–101.  No additional conditions were imposed.  See Doc. 28-1 at 92; see also docs. 1-1 at 2–6 & 28-1 at 96–101 (IJ's written order).

That same day, the Department of Homeland Security ("DHS") filed a Form EOIR-43 Notice of Intent to Appeal Custody Redetermination, which by regulation imposed an automatic stay of the IJ's order releasing Petitioner on bond.  See Doc. 1-2.  DHS then filed a form EOIR-26, notice of appeal and appealed the bond decision to the Board of Immigration Appeals ("BIA").  See Doc. 28-1 at 94–95.  DHS perfected its appeal by filing a brief with the BIA on August 20, 2025, arguing that Petitioner is an "applicant for admission" and thus ineligible for bond under 8 U.S.C. § 1225(b).  See Doc. 1 at 15 (citing "INA § 235(b)(2)(A)").  Petitioner opposed the appeal, arguing that his custody was properly governed by 8 U.S.C. § 1226(a).

On September 11, 2025, while the BIA appeal was pending, DHS filed a motion for bond redetermination with the IJ, arguing that under a September 5, 2025 BIA decision (Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 216 (BIA 2025)), the IJ lacked authority to hear bond requests or to grant bond to aliens who are present in the United States without admission.  Doc. 15-1 at 2; see also Doc. 28-1 at 137.  The IJ granted DHS's motion for redetermination "in light

of [Yajure Hurtado]." Doc. 15-2 at 1. In Yajure Hurtado, the BIA held that "aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." Meanwhile, DHS's appeal progressed, and on October 10, 2025, the BIA sustained DHS's appeal and vacated the IJ's original decision granting bond, based on the same reasoning. See Doc. 28-1 at 149–150.

In his Amended Petition, Petitioner contends he is being unlawfully detained. Petitioner makes several arguments, but, generally, he attacks two aspects of his detention. First, he contends that his detention is governed by § 1226(a) and not § 1225(b)(2)(A), as the IJ concluded during the custody redetermination. Second, Petitioner contends that the automatic stay regulation, which stays an IJ's release order during an appeal to the BIA, is unlawful and cannot be enforced.[1] In addition to his counts seeking habeas relief on these arguments, Petitioner requests a declaration "that the Petitioner is not an applicant for admission 'seeking admission' or 'an arriving alien' subject to mandatory detention under 1225(b)(1) or (b)(2)," and that "Petitioner's current detention by Respondents, if justified at all, is governed solely by 8 U.S.C. § 1226(a)."

## DISCUSSION

Petitioner brought eleven counts, asserting several different legal theories, but the core issue is whether Petitioner's detention is governed by 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a). Respondents, in their Response and Motion to Dismiss, argue that Petitioner's Petition is a "shotgun" pleading; that the Court is jurisdictionally barred by 8 U.S.C. § 1252(g); that

---

[1]    At the time Petitioner filed his initial Petition, Petitioner was being detained subject to the automatic stay provision. Now that the BIA has sustained DHS's appeal and the IJ vacated the original decision, Petitioner is no longer detained under the automatic stay provision. Nonetheless, Petitioner continues to challenge the automatic stay provision in his Amended Petition.

Petitioner is lawfully detained under § 1225(b); and that Petitioner's challenges to the automatic stay provisions are moot.  Docs. 15, 28.  Thus, before addressing the merits of the Petition, I must consider the jurisdictional arguments asserted by Respondents.  See, e.g., Djadju v. Vega, 32 F.4th 1102, 1106 (11th Cir. 2022) ("Because mootness is jurisdictional, we are required to resolve any question implicating the doctrine before we assume jurisdiction over an appeal.") (citation omitted).

## I.  The Court Has Jurisdiction to Adjudicate the Petition

The Court has the authority to grant a writ of habeas corpus to a petitioner who demonstrates that he is being held in custody in violation of federal law.  28 U.S.C. § 2241(a), (c)(3); see INS v. St. Cyr, 533 U.S. 289, 301 (2001) ("[T]he writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."); Zadvydas v. Davis, 533 U.S. 678, 687 (2001) (noting that § 2241 habeas corpus proceedings are available to challenge the lawfulness of immigration-related detention).  However, Respondents contest the Court's jurisdiction, arguing that the "plain language of 8 U.S.C. § 1252(g) and the Eleventh Circuit's consistent interpretation of this provision independently foreclose Petitioner's habeas corpus claims."  Doc. 28 at 5.  Petitioner argues in response that his habeas claims do not challenge the Attorney General's decision to commence removal proceedings, adjudicate his case, or execute a removal order, and, therefore, § 1252(g) does not deprive the Court of jurisdiction.

Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  The United States Supreme Court has given § 1252(g) a "narrow

reading," emphasizing that it does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation." Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482, 487 (1999); see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020) (characterizing § 1252(g) as narrow). Rather, as "the Supreme Court has explained, § 1252(g) lists just three 'discrete actions': actions to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting Reno, 525 U.S. at 482). "[A]lthough 'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [a court's] review (at least by this provision)." Id. (quoting Reno, 525 U.S. at 482).

The Supreme Court has likewise interpreted § 1252(g)'s "arise from" language narrowly, cautioning that § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions." Jennings v. Rodriguez, 583 U.S. 281, 294 (2018). Instead, the statute "refer[s] to just those three specific actions themselves." Id. In other words, to determine whether a claim "arise[s] from" one of the covered actions, "courts must focus on the action being challenged," Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs., 964 F.3d 1250, 1258 (11th Cir. 2020), namely, whether one of the three actions listed in § 1252(g) forms the "basis of the claim," Gupta v. McGahey, 709 F.3d 1062, 1065 (11th Cir. 2013) suggestion for reh'g en banc denied, 737 F.3d 694 (2013), cert. denied, 573 U.S. 931 (2014).

Consequently, an alien who seeks a stay of a removal order or challenges the Attorney General's deportation authority "runs headlong into § 1252(g)" regardless of how the alien frames their claim, but jurisdiction is appropriate over a claim that instead challenges the legal bases of a detention decision. Camarena, 988 F.3d at 1273. The Eleventh Circuit, as well as

other circuits, have distinguished between situations where an alien's claims are founded directly on a decision or action to commence proceedings, adjudicate cases, or execute removal orders, from those where an alien challenges the "underlying legal bases" of those decisions or actions. See Madu v. U.S. Atty. Gen., 470 F.3d 1362, 1368 (11th Cir. 2006) (citations omitted); accord Kong v. United States, 62 F.4th 608, 613 (1st Cir. 2023) (finding that § 1252(g) does not bar "judicial consideration of collateral challenges to the legality of a petitioner's detention"); United States v. Hovsepian, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) (finding that § 1252(g) does not bar consideration of "a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority"); Parra v. Perryman, 172 F.3d 954, 957 (7th Cir. 1999) (finding that § 1252(g) did not bar review of a claim related to detention where the petitioner "did not ask the district court to block a decision 'to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter'").

Respondents characterize Petitioner's Amended Petition as challenging Petitioner's detention "during removal proceedings," and thus argue that Petitioner is effectively challenging the removal itself because the detention arose from the removal proceedings.  Doc. 28 at 6. Respondents' argument is unconvincing.  Petitioner does not challenge the decision to commence proceedings against him, adjudicate his case, or execute his removal.  Rather, the "basis of Petitioner's claim" is an attack on the underlying legal bases of his detention. Petitioner argues that Respondents did not comply with the statutory requirements regarding his right to a bond hearing.  Moreover, Respondents have not argued that Petitioner is subject to a removal order yet.  Thus, Respondents' jurisdiction argument fails.  See Djadju, 32 F.4th at

1105–06 ("Although our jurisdiction to consider challenges under § 2241 to an alien's detention

is limited, we have jurisdiction to address a challenge to the legal basis of the detention,

including constitutional challenges.") (citing <u>Madu v. U.S. Att'y Gen.</u>, 470 F.3d 1362, 1368

(11th Cir. 2006)); <u>Chavez v. Director of Detroit Field Office, et. al.</u>, No. 4:25-CV-02061, 2025

WL 2959617, at *3 (N.D. Ohio Oct. 20, 2025) ("[T]he district court may review whether an alien

is lawfully detained; the Attorney General's immigration authority does not abrogate § 2241's

authority to grant the writ within these bounds.); <u>Cf.</u> <u>Jose J.O.E. v. Bondi</u>, No. 25-CV-3051,

2025 WL 2466670, at *7 (D. Minn. Aug. 27, 2025) (citing <u>Jennings</u>, 583 U.S. at 294–95 ("For

present purposes, it is enough to note that respondents are not asking for review of an order of

removal; they are not challenging the decision to detain them in the first place or to seek

removal; and they are not even challenging any part of the process by which their removability

will be determined.  Under these circumstances, § 1252(b)(9) does not present a jurisdictional

bar.")).  In sum, the Court has jurisdiction to adjudicate Petitioner's challenge to the legality of

his detention.  <u>See</u> <u>Zadvydas</u>, 533 U.S. at 687.

## II.    Petitioner's Pleading Is Sufficient

Respondent next argues that Petitioner's Petition is a "shotgun" pleading.  Courts

consider a complaint to be a shotgun pleading when it "contain[s] multiple counts where each

count adopts the allegations of all preceding counts, causing each successive count to carry all

that came before and the last count to be a combination of the entire complaint."  <u>Weiland v.</u>

<u>Palm Beach Cnty. Sheriff's Office</u>, 792 F.3d 1313, 1321–22 (11th Cir. 2015).  This practice is

typically banned when there are not additional allegations under each count that "give the

defendants adequate notice of the claims against them and the grounds upon which each claim

rests." <u>Vibe Micro, Inc. v. Shabanets</u>, 878 F.3d 1291, 1294–95 (11th Cir. 2018) (quoting <u>Weiland</u>, 792 F.3d at 1323).

Indeed, Petitioner seeks relief on many counts in a manner that overly complicates this straightforward habeas claim, where statutory interpretation is dispositive.  Petitioner also attempted to include multiple overlapping counts where each count adopted the allegations of all preceding counts, including the counts contained in the original Petition.  Petitioner also seeks a declaratory judgment in addition to habeas relief which, if granted, would lead to the same result. <u>See, e.g.</u>, <u>Lashley v. Gonzalez</u>, No. 1:07-CV-1589, 2007 WL 2908652, at *1 n.1 (N.D. Ga. Oct. 2, 2007) ("[T]he only relief available via a habeas corpus action is immediate or speedier release from custody.") (citing <u>Preiser v. Rodriquez</u>, 411 U.S. 475 (1973)).  Although the Petition is convoluted, the thrust of the Petition is clear: Petitioner is being unlawfully detained under § 1225.  In other words, the Petition provides adequate facts and notice to the Respondents of the claims.  Thus, I conclude that Petitioner's Petition is not a "shotgun pleading."  <u>See, e.g.</u>, <u>Sulfco, LLC v. SubGallagher Inv. Tr.</u>, No. 4:19-CV-255, 2021 WL 5514011, at *4 (S.D. Ga. Apr. 5, 2021).

## III.    Section 1226(a) Governs Petitioner's Detention

Sections 1225 and 1226 of the Immigration and Nationality Act ("INA") govern the detention of certain noncitizens before a final order of removal.  The heart of the parties' dispute concerns which of these two provisions governs Petitioner's detention.  Petitioner asserts that his detention is covered by § 1226(a) ("discretionary detention"), while Respondents argue that Petitioner is detained under §1225(b)(2)(A) ("mandatory detention").

**A.      Statutory Framework**

Whether Petitioner is detained under § 1225(b)(2) or § 1226(a) is an issue of statutory

interpretation.  Before addressing statutory construction, it is critical to review the relevant

portions of § 1225:

> § 1225. Inspection by immigration officers; expedited removal of inadmissible
> arriving aliens; referral for hearing
>
>> (a) Inspection
>>
>>> (1) Aliens treated as applicants for admission
>>>
>>> An alien present in the United States who has not been admitted or
>>> who arrives in the United States (whether or not at a designated
>>> port of arrival and including an alien who is brought to the United
>>> States after having been interdicted in international or United
>>> States waters) shall be deemed for purposes of this chapter an
>>> applicant for admission.
>>>
>>> . . .
>>>
>>> (3) All aliens (including alien crewman) who are applicants for
>>> admission or otherwise seeking admission or readmission to or
>>> transit through the United States shall be inspected by immigration
>>> officers.
>>
>> (b) Inspection of applicants for admission
>>
>>> . . .
>>>
>>> (2) Inspection of other aliens
>>>
>>> (A) In general
>>>
>>> Subject to subparagraphs (B) and (C), in the case of an alien who is
>>> an applicant for admission, if the examining immigration officer
>>> determines that an alien seeking admission is not clearly and
>>> beyond a doubt entitled to be admitted, the alien shall be detained
>>> for a proceeding under section 1229a of this title.

Thus, § 1225 covers "inadmissible arriving aliens" who are "applicants for admission"

"present in the United States who [have] not been admitted."  <u>Gomes v. Hyde</u>, No. 25-cv-11571,

2025 WL 1869299, at *2 (D. Mass. July 7, 2025) (alteration in original; citation and footnote call

number omitted).  Section 1225(a)(3) requires all applicants for admission, including those

"seeking admission," to be inspected by an immigration officer, see 8 U.S.C. § 1225(a)(3); and

certain applicants for admission may be subject to removal proceedings under section 1225(b).  8

U.S.C. § 1225(a) – (b); see also Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108–09

(2020) (citations omitted).  Relevant here, § 1225(b)(2) applies where an arriving alien is

"seeking admission" into the United States, and that provision mandates detention for aliens who

are "applicants for admission."  8 U.S.C. § 1225(b)(2)(A).  "Because Section 1225 is mandatory,

a 'noncitizen detained under Section 1225(b)(2) may be released only if he is paroled for urgent

humanitarian reasons or significant public benefit.'"  Barrera v. Tindall, No. 25-cv-541, 2025

WL 2690565, at *2 (W.D. Ky. Sept. 19, 2025) (quoting Gomes, 2025 WL 1869299, at *1).

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain

aliens *already in the country* pending the outcome of removal proceedings[.]"  Jennings, 583

U.S. at 289 (emphasis and alteration added).  Section 1226(a) sets out a discretionary detention

framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney

General."[2]  8 U.S.C. § 1226(a).  Section 1226(a) authorizes the Attorney General to "continue to

detain the arrested alien[,]" release him on a "bond of at least $1,500[,]" or release him on

"conditional parole[,]" id. § 1226(a)(1) – (2) (alterations added).  While the arresting

immigration officer makes an initial custody determination, noncitizens detained under § 1226(a)

may appeal that determination in a bond hearing before an immigration judge.  See 8 C.F.R. §§

1236.1(c)(8), (d)(1).  "Federal regulations provide that aliens detained under § 1226(a) receive

bond hearings at the outset of detention."  Jennings, 583 U.S. at 306 (alteration added) (citing 8

[2]      In this case, the IJ noted that Petitioner was arrested on an ICE warrant for a municipal criminal act of driving without a license, and that Petitioner was originally detained under § 1226.  Doc. 28-1 at 96–97.  Therefore, the record reflects Petitioner was considered detained under § 1226 (and the automatic stay provision) until the IJ conducted a custody redetermination in light of Yajure Hurtado.

C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); <u>see also</u> <u>Lopez Benitez v. Francis</u>, No. 25-Civ-5937, 2025 WL 2371588, at *13 (S.D.N.Y. Aug. 13, 2025) ("To be sure, a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").  In sum, if Petitioner is subject to § 1225(b)(2), his detention is mandatory; if Petitioner is subject to § 1226(a), his detention is discretionary, and he is entitled to a bond hearing.

### B.    DHS Policy Shift and <u>Yajure Hurtado</u>

Until mid-2025, DHS applied "§ 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation."  <u>Ortiz Donis v. Chestnut</u>, No. 1:25-CV-01228, 2025 WL 2879514, at *5 (E.D. Cal. Oct. 9, 2025); <u>E.C. v. Noem</u>, No. 2:25-CV-01789, 2025 WL 2916264, at *1 (D. Nev. Oct. 14, 2025) (noting that, until recently, "*millions* of noncitizens had been informed that they could participate in removal proceedings, which can take months or years, out of custody, so long as they could establish they were neither a flight risk nor danger to the community.") (emphasis in original).

However, on July 8, 2025, DHS issued an internal memorandum to all ICE employees stating that DHS was changing its approach to how it treated foreign nationals "alleged to be present in the country without admission and who would have previously been detained by DHS under 8 U.S.C. § 1226 and offered a bond hearing unless subject to criminal detention[.]"  <u>Ortiz Donis</u>, 2025 WL 2879514, at *1.  The memo stated that DHS would now categorize any such foreign national as "an 'applicant for admission' and therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)," regardless of whether the foreign national was detained at a port of entry.  Doc. 15-3.

On September 5, 2025, the BIA issued its <u>Yajure Hurtado</u> opinion.  In <u>Yajure Hurtado</u>, the BIA held that IJs lack jurisdiction to hear bond requests of noncitizens who are present in the United States without inspection and admission because those individuals are properly classified under 8 U.S.C. § 1225(b)(2), subject to mandatory detention, and ineligible for a bond hearing. <u>Matter of Yajure Hurtado</u>, 29 I. & N. Dec. 216, 225 (BIA 2025).  As a result of these shifts in interpretation of § 1225, Petitioner has been detained despite his long-term presence in the United States.

### C.    Analysis

I will utilize canons of statutory interpretation to consider the Petitioner's challenge. First, I will consider the plain meaning of the statute.  <u>See</u> <u>Shotz v. City of Plantation</u>, 344 F.3d 1161, 1167 (11th Cir. 2003); <u>see also</u> <u>Fed. Election Comm'n v. Reform Party of U.S.</u>, 479 F.3d 1302, 1307 (11th Cir. 2007).  Second, I will apply the canon against surplusage to construe the statute "so that effect is given to all its provisions[.]"  <u>Corley v. United States</u>, 556 U.S. 303, 314 (2009).

### 1.    *The plain meaning of the statute supports Petitioner's construction.*

The parties' dispute largely hinges on the meaning of "seeking admission" § 1225(b)(2). While the INA defines the terms "admission," "admitted," and "applicant for admission," it does not define "*seeking* admission."  8 U.S.C. §§ 1101(13)(A), 8 U.S.C. § 1225(a)(1) (emphasis added).  To determine the plain meaning of the statute, the Court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."  <u>See K Mart Corp. v. Cartier, Inc.</u>, 486 U.S. 281, 291 (1988).

During oral argument, Petitioner argued that the plain, ordinary meaning of § 1225 rendered Respondents' interpretation impossible.  Counsel supported this argument by noting

that the title of § 1225 intentionally refers to "arriving" aliens, which highlights the statute's function and the meaning of "seeking admission." Petitioner noted that the statute's language establishes an inspection scheme for when to allow aliens into the country, whether they be an alien who has arrived at a designated port of arrival or one who is brought to the United States after having been interdicted in international waters. See § 1225(a)(1), (a)(2). Petitioner argued that the plain language of § 1225, especially when considering its title, shows the statute applies only to arriving aliens "seeking" admission at a port of entry, and not those who have been in the country for a period of time, such as Petitioner.

Indeed, the title of § 1225 is: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added). And the statute establishes an inspection scheme for when to allow aliens "seeking admission" into the country. As to what "arriving" aliens means, courts have noted "the language appears susceptible to multiple interpretations." Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr., No. 25-24535-CIV, 2025 WL 2938369, at *4 (S.D. Fla. Oct. 15, 2025) (citing Yates v. United States, 574 U.S. 528, 537 (2015)). Plainly, § 1225(b)(2)(A) requires mandatory detention of all "applicants for admission" if the examining immigration officer determines that "an alien seeking admission is not clearly beyond a doubt entitled to be admitted." "Applicant for admission" is defined in the statute as an alien "present in the United States who has not been admitted." § 1225(a)(1), but "seeking admission," like "arriving alien," is not defined.

The expression "alien seeking admission" plainly describes individual taking some action, and, given the placement in the statute, that action would likely occur at the border upon inspection. Numerous courts that have considered the issue have reached the same conclusion. See J.A.M. v. Streeval, et al., No. 4:25-CV-342 (CDL), 2025 WL 3050094, at *3 (M.D. Ga. Nov.

1, 2025) ("'Seeking admission' is a participial phrase that modifies the noun alien. It narrows the meaning of alien to one who is attempting to obtain lawful admission to the United States. 'Seek' is an active verb, not a type of status."); <u>Puga</u>, 2025 WL 2938369, at *4 (citing <u>Lopez-Campos v. Raycraft</u>, No. 2:25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) and <u>Rosado v. Figueroa</u>, No. 25-cv-02157, 2025 WL 2337099, at *11 (D. Ariz. Aug. 11, 2025), <u>report and recommendation adopted</u>, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025)). The courts have concluded—as I do—that the phrase "seeking admission" "implies action—something that is currently occurring, and . . . would most logically occur at the border upon inspection." <u>Lopez-Campos</u>, 2025 WL 2496379, at *6 (analogizing the issue to when someone enters a movie theater without purchasing a ticket who would not be deemed to be "seeking admission" when noticed after watching the first few minutes of the film). Thus, the plain language of the statute demonstrates that an individual like Petitioner, who has resided inside the United States for some period of time, is not an "alien seeking admission."

The applicable regulations related to § 1225(b)(2) further support this reading of the statute. An agency's implementing regulations are not binding on the Court's construction of a statute, but those regulations can provide a useful reference point for understanding a statutory scheme, particularly where the regulations were "issued roughly contemporaneously with enactment of the statute and [have] remained consistent over time." <u>Loper Bright Enters. v. Raimondo</u>, 603 U.S. 369, 385–86 (2024). Here, the regulation—which treats "arriving alien" as roughly interchangeable with an "applicant . . . seeking admission"—was promulgated mere months after passage of the statute, and the relevant subsection has never been changed.[3] Under

---

[3]    Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01, 1997 WL 93131 (Mar. 6, 1997) (implementing provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996).

the regulations, an "arriving alien means an applicant for admission coming or attempting to come into the United States." 8 C.F.R. § 1.2. And, as noted, under the statute, an applicant for admission is defined as a person who is "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). When read together with the title, an "arriving alien" is an "applicant" who is also *doing* something: coming or attempting to come into the United States. In other words, an "alien seeking admission" is an individual who is actively seeking admission, not one who is already present in the United States. Accordingly, the implementing regulation demonstrates that Petitioner is not subject to mandatory detention under § 1225(b)(2), which plainly controls "arriving aliens" who have not been admitted, but who are "seeking admission."

Other courts have reached the same conclusion. For example, as explained in <u>Martinez v. Hyde</u>, one of the early cases to consider the issue, the court noted that language in the regulation "mirrors the text of section 1225(b)(2)(A), which applies where an individual is an "applicant" who is also *doing* something: "seeking admission." No. CV 25-11613, 2025 WL 2084238, at *7 (D. Mass. July 24, 2025) ("The use of the present progressive tense 'arriving,' rather than the past tense 'arrived,' implies some temporal or geographic limit.") (quoting <u>Matter of M-D-C-V-</u>, 28 I. & N. Dec. 18, 23 (B.I.A. 2020) ("The 'use of the present progressive, like use of the present participle, denotes an ongoing process.'") (citation omitted)). Thus, the plain language of the statute supports Petitioner's construction, especially when considering the title and the implementing regulations. Petitioner is not an arriving alien seeking admission for purposes of § 1225.

2.    ***Respondents' construction would render aspects of the statutory scheme superfluous.***

Aside from the statutory construction, Respondents' argument suffers from another flaw. If Respondents' view was correct, a large part of the INA's statutory scheme would be rendered superfluous.

The Supreme Court has made clear that "[a] statute should be construed so that effect is given to all its provisions[.]"  Corley, 556 U.S. at 314.  Each word in a statute is intended to have "particular, nonsuperfluous meaning" and statutes must be construed in this manner.  Bailey v. United States, 516 U.S. 137, 146 (1995); Bilski v. Kappas, 561 U.S. 593, 607–08 (2010) (noting that courts may not interpret "any statutory provision in a manner that would render another provision superfluous"); In re Shek, 947 F.3d 770, 778 (11th Cir. 2020), quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("[T]he Supreme Court has instructed us that the surplusage canon does not only apply when a potential interpretation would leave a statutory provision with *no* role; it also applies when an interpretation would render a 'clause, sentence, or word . . . superfluous, void, or *insignificant*.'") (emphasis in original).  With this guidance in mind, I first review the structure of § 1225 and § 1226 to ensure each provision has some nonsuperfluous meaning, and then I review legislative amendments to the INA to ensure its construction gives meaning to those amendments.

Given the construction of the statutes, the Supreme Court has historically treated noncitizens who, like Petitioner, are already in the United States, as being governed by § 1226(a) by default.  See Jennings, 583 U.S. at 303 (noting that § 1226 "creates a default rule" that "applies to aliens already present in the United States").  Recent district court decisions have likewise found that § 1226(a) serves as a catchall or default when comparing with § 1225. Pizarro Reyes v. Raycraft, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9,

2025) ("Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall."). The inclusion of a "catchall" provision in § 1226, particularly following the more specific provision in § 1225, is "likely no coincidence, but rather a way for Congress to capture noncitizens who fall outside of the specified categories" contained within § 1225. Id.; see also Barrera, 2025 WL 2690565, at *4 (citation omitted).

If § 1225 stood alone, perhaps Respondents' construction would be feasible, but it does not. When reviewing § 1225 alongside § 1226, Petitioner's construction gives § 1226(a) meaning. Respondents' construction of § 1225(b)(2) would make § 1226(a) essentially irrelevant, as nearly every noncitizen in the United States would be subject to mandatory detention. Indeed, at oral argument, I asked Respondents to explain who would be subject to discretionary detention under § 1226(a) under Respondents' construction of § 1225(b)(2). Respondents were unable to identify any category of individuals who would be subject to § 1226(a). Other courts have similarly concluded that Respondents' interpretation of § 1225(b)(2)(A) would largely nullify § 1226(a) because "it is not clear under what circumstances § 1226(a)'s authorization of detention on a discretionary basis would ever apply." See Lopez Benitez, 2025 WL 237188, at *8. The consequences of Respondents' proposed construction (i.e., that § 1225 mandatory detention would apply to every person in the United States without legal status) highlights the implausibility of the proposed construction. Congress certainly would not a create a catchall in § 1226(a) if § 1225 applies to every person in the United States without legal status.

Moreover, the legislative history shows that under Respondents' construction, several other sections of the INA would become superfluous. First, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996. Before the IIRIRA

was passed, the predecessor statute to §§ 1225 & 1226, 8 U.S.C. § 1252 (1994), distinguished individuals based on "entry" rather than admission.  <u>Hing Sum v. Holder</u>, 602 F.3d 1092, 1099 (9th Cir. 2010).  Noncitizens who had effected an "entry" into the United States were subject to deportation proceedings, while those who had not made an "entry" were subject to "more summary" exclusion proceedings.  <u>Id.</u> at 1099–1100.  This led to a situation where noncitizens who had overstayed their visas or entered illegally had more due process rights than noncitizens who presented themselves at a port of entry.  To remedy this, the IIRIRA substituted "admission for entry" and replaced deportation and exclusion proceedings with a general "removal" proceeding.  <u>Id.</u>  However, in making these changes, Congress did not alter the discretionary bond provision contained in the predecessor statute.  In fact, according to the legislative record, "Section [1226(a)] restate[d] the [then] current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States."  H.R. REP. 104-469, 229.  The legislative record thus proves that Congress intended to continue to allow discretionary bond to noncitizens covered by § 1226(a).  Under Respondents' construction, retaining that portion of the statute would have been pointless.

The second amendment of the INA came in January 2025, when Congress passed the Laken Riley Act, amending § 1226(c) to add a category of noncitizens subject to mandatory detention.  Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).  This category includes noncitizens who are (1) inadmissible under §§ 1182(6)(A), (6)(C), or (7)(A), and (2) that have been charged with "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."[4]  8 U.S.C. § 1226(c)(1)(E)(ii).  If the Respondents' view is correct, all noncitizens who are inadmissible are

---

[4]      None of these provisions applies to Petitioner.  This amendment is discussed here as it informs analysis of the statutory construction issue, not because the amendments apply in this case.

already subject to mandatory detention under § 1225(b)(2), regardless of whether they have been charged with a qualifying crime and thus are subject to § 1226(c) or not.  See, e.g., Martinez, 2025 WL 2084238, at *7 ("[S]ection 1226 generally implements a discretionary scheme for non-citizen detention but carves out certain disfavored non-citizens whom the Government is required to detain.").  Respondents' proposed construction of § 1225(b)(2) would render this portion of the Laken Riley Act meaningless, since it would have prescribed mandatory detention for noncitizens already subject to it.  But "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."  Stone v. I.N.S., 514 U.S. 386, 397 (1995); see also Marx v. Gen. Revenue Corp., 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").  If Congress amended § 1226(c) to create mandatory detention for certain inadmissible noncitizens, it follows that those noncitizens were not already subject to mandatory detention under § 1225(b)(2).  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) (holding that, where "Congress has created specific exceptions" to the applicability of a statute or rule, it "proves" that the statute or rule generally applies absent those exceptions)); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) (describing the "surplusage canon": "If possible, every word and every provision is to be given effect . . . None should be ignored.  None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.").  Thus, the scope of § 1225(b)(2) cannot be as broad as the Respondents argue.

Many other district courts have considered and rejected Respondents' proposed construction of § 1225, concluding it would have been unnecessary for Congress to amend § 1226(c) to add another category of noncitizens who must be detained if those individuals were

already subject to mandatory detention under § 1225(b)(2).  See Romero v. Hyde, No. CV 25-11631, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025); Ortiz Donis, 2025 WL 2879514, at *9 ("[T]he Government's interpretation would 'nullify' a recent amendment to the immigration statutes."); Rodriguez v. Bostock, 779 F. Supp. 3d 1239, 1258 (W.D. Wash. 2025) ("[I]f the immigration court's interpretation of Section 1225 is correct and its mandatory detention provisions apply to 'all noncitizens who have not been admitted,' then it would render superfluous provisions of Section 1226 that apply to certain categories of inadmissible noncitizens.") (internal citations omitted).

On the other hand, if Petitioner's detention is governed by § 1226(a), all portions of the statute have effect.  Petitioner was "arrested on a warrant," see 8 U.S.C. § 1226(a), . . . and not detained while "arriving" or "seeking" admission as an "applicant," see 8 U.S.C. § 1225(a) & (b)(2).   After living in the United States for approximately 16 years, he was "detained pending a decision on whether he is to be removed," see 8 U.S.C. § 1226(a), and not during an inspection as described in § 1225(a) upon arrival, and thus he is entitled to discretionary release on bond under §1226(a)(2).

Accordingly, when applying canons of statutory interpretation, including the Supreme Court's directives to contemplate the plain language and the rule against surplusage when construing it, the structure and legislative history of the INA weighs in favor of Petitioner's construction of the statute.  And so too does Supreme Court dicta which has historically treated noncitizens, like Petitioner, who are already in the United States without legal status, as being governed by § 1226(a).  See Zadvydas, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."); Thuraissigiam, 591 U.S. at 138 (discussing the "century-old rule regarding

the due process rights of an alien seeking initial entry"); <u>see also</u> <u>Jean v. Nelson</u>, 727 F.2d 957, 967 (11th Cir. 1984) ("Any analysis of the constitutional rights of [noncitizens] in the immigration context must begin by taking note of the fundamental distinction between the legal status of excludable or unadmitted aliens and aliens who have succeeded in effecting an "entry" into the United States, even if their presence here is completely illegal.").  Properly construed, Petitioner's detention is governed by § 1226(a).

### 3. *<u>Yajure Hurtado</u> is unpersuasive.*

I also find <u>Yajure Hurtado</u> unpersuasive.  "[C]ourts must exercise independent judgment in determining the meaning of statutory provisions" and they "may not defer to an agency interpretation of the law simply because a statute is ambiguous."  <u>Loper Bright</u>, 603 U.S. at 413; <u>Gomes</u>, 2025 WL 1869299, at *8 n.9 (D. Mass. July 7, 2025) (same).  As the Supreme Court has made clear, "agencies have no special competence in resolving statutory ambiguities," "[c]ourts do."  <u>Loper Bright</u>, 603 U.S. at 400–01.

The BIA's decision in <u>Yajure Hurtado</u> "conflicts with the implementing regulation for § 1225(b)" by adopting a more expansive interpretation of § 1225(b) than the regulation.  <u>Ortiz Donis</u>, 2025 WL 2879514, at *8; <u>Martinez</u>, 2025 WL 2084238, at *6.  "The BIA's novel interpretation that any alien present in the United States is 'seeking admission' distorts the plain meaning of the statute."  <u>J.A.M.</u>, 2025 WL 3050094, at *4.  <u>Yajure Hurtado</u> also ignores § 1226 and fundamental canons of statutory interpretation that require consideration of the relevant context within which the statute exists.  <u>Merino v. Ripa</u>, No. 25-23845-CIV, 2025 WL 2941609 (S.D. Fla. Oct. 15, 2025).  Dozens of district court decisions have rejected the BIA's expansive interpretation of §1225(b) in <u>Yajure Hurtado</u>, and their analyses are persuasive.  <u>See, e.g.</u>, <u>Garcia v. Noem, et. al.</u>, No. 1:25-CV-1271, 2025 WL 3017200, at *4 (W.D. Mich. Oct. 29, 2025); <u>Diaz</u>

v. Olson, et. al., No. 25 CV 12141, 2025 WL 3022170, at *5 (N.D. Ill. Oct. 29, 2025); Rodriguez
v. Noem, et. al., No. 1:25-CV-1196, 2025 WL 3022212, at *6 (W.D. Mich. Oct. 29, 2025); Puga,
2025 WL 2938369; Lopez-Campos, 2025 WL 2496379, at *8; see also Rodriguez, 779 F. Supp.
3d at 1256–61; Singh v. Lewis, No. 4:25-cv-96, 2025 WL 2699219, at *3–5 (W.D. Ky. Sept. 22,
2025); Lopez-Arevelo v. Ripa, No. EP-25-CV-337, 2025 WL 2691828, at *7–12 (W.D. Tex.
Sept. 22, 2025); Campos Leon v. Forestal, No. 1:25-cv-1774, 2025 WL 2694763, at *2–5 (S.D.
Ind. Sept. 22, 2025); Hasan v. Crawford, No. 1:25-cv-1408, 2025 WL 2682255, at *5–9 (E.D.
Va. Sept. 19, 2025); Garcia Cortes v. Noem, No. 1:25-cv-2677-CNS, 2025 WL 2652880, at *2–3
(D. Colo. Sept. 16, 2025); Kostak v. Trump et al., No. 3:25-cv-01093, 2025 WL 2472136, at *2–
4 (W.D. La. Aug. 27, 2025); Romero, 2025 WL 2403827, at *8–13 (D. Mass. Aug. 19, 2025);
Maldonado v. Olson, No. 0:25-cv-03142, 2025 WL 2374411, at *9–16 (D. Minn. Aug. 15,
2025); dos Santos v. Noem, No. 1:25-cv-12052, 2025 WL 2370988, at *6–9 (D. Mass. Aug. 14,
2025); Lopez Benitez, 2025 WL 2371588, at *3–9; Rosado, 2025 WL 2337099, at *6–11, report
and recommendation adopted, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); Gomes, 2025 WL
1869299, at *6–8.

### 4.    *Petitioner is entitled to discretionary bond under § 1226(a)(2).*

In sum, I conclude that Petitioner is not subject to mandatory detention under §
1225(b)(2).  The plain language of § 1225, when read in conjunction with the title and
implementing regulations, makes clear that § 1225(b)(2) is inapplicable to Petitioner, as he is not
an arriving alien actively seeking admission to the United States.  Furthermore, Respondents'
construction of § 1225 would render § 1226(a) and (c) superfluous, and it would make the
legislative amendments illogical.  I agree with the vast majority of other courts that have held
that movants, like Petitioner, who are detained after being present in the United States and who

are not currently "seeking admission" at a port of entry or some other category delineated by § 1225, are entitled to discretionary bond under § 1226(a). See Gutierrez v. Baltasar et. al., No. 25-CV-2720-RMR, 2025 WL 2962908, at *5 (D. Colo. Oct. 17, 2025) ("Only three of the thirty-eight decisions . . . citing the BIA's decision in Yajure Hurtado, have denied the relief requested by the noncitizen."); see also doc. 44-1 (Petitioner's notice of supplemental authority, containing 151 citations to favorable district court cases). Accordingly, I recommend relief on Petitioner's Count 2. Because Petitioner was already granted bond, only for it to be retracted by the IJ in reliance on the erroneous Yajure Hurtado decision, he is entitled to be released. Given these conclusions, I decline to take up the remaining counts contained within the Petition, which assert alternative legal bases for the same requested relief, except as to Petitioner's request for a Declaratory Judgment, which I recommend denying as duplicative.

## IV.    Petitioner's Automatic Stay Arguments Are Moot

Petitioner challenges his detention based on the automatic stay. As noted above, Petitioner was being detained subject to the automatic stay provision (8 CFR Section § 1003.19(i)(2)) at the time he filed his initial Petition. The BIA sustained DHS's appeal and the IJ vacated the original decision, meaning that Petitioner is no longer detained under the automatic stay provision. Nonetheless, Petitioner maintains in his Amended Petition that the automatic stay provision in § 1003.19(i)(2) is *ultra vires* and violates his due process rights. Doc. 15 at 44–58. Respondents argue that Petitioner's challenges related to the automatic stay regulation are moot.

Article III of the Constitution "extends the jurisdiction of federal courts to only 'Cases' and 'Controversies.'"  Strickland v. Alexander, 772 F.3d 876, 882 (11th Cir. 2014). This "case-or-controversy restriction imposes" what is "generally referred to as 'justiciability' limitations."

Id.  The Supreme Court has made clear that "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"  Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (internal quotation marks and citation omitted).  Accordingly, "[a]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."  Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009) (internal quotation marks and citation omitted).  Questions of justiciability are not answered "simply by looking to the state of affairs at the time the suit was filed.  Rather, the Supreme Court has made clear that the controversy 'must be extant at all stages of review, not merely at the time the complaint is filed."  Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1189–90 (11th Cir. 2011) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quotation marks omitted).

Petitioner asserts that the mootness argument "fails to grasp the ongoing nature of the controversy and the government's role in creating the current situation."  Doc. 37 at 11.  Petitioner argues the government's "cessation" of the automatic stay was a strategic shift in legal theory in response to Petitioner's challenge, and that the "underlying issue of the automatic stay's legality and constitutionality remains a live controversy."  Id. at 12.  Petitioner seeks both habeas relief and a declaratory judgment related to the automatic stay provision.  Id.  ("Petitioner seeks not only release but also a declaration that the government's actions, including its reliance on the automatic stay, were unlawful.  Such declaratory relief is not moot.")

Habeas corpus is fundamentally "a remedy for unlawful executive detention."  Munaf v. Geren, 553 U.S. 674, 693 (2008) (citation omitted).  A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law.  See

28 U.S.C. § 2241(c)(3).  Petitioner must be able to establish "some concrete and continuing injury other than the now-ended incarceration" or some "collateral consequence," relevant to the automatic stay provision in order to obtain relief.  See Spencer v. Kemna, 523 U.S. 1, 7 (1998); Salmeron-Salmeron v. Spivey, 926 F.3d 1283, 1290 (11th Cir. 2019) (extending the "collateral consequences" doctrine to habeas petitions brought in the immigration context).  Consequently, if a petitioner's basis for detention is unrelated to the allegations of prior unlawful detention before a court, the allegations concerning the prior detention are moot.  See, e.g., Al Najjar v. Ashcroft, 273 F.3d 1330, 1338 (11th Cir. 2001) (where basis for detention was "completely unrelated" to allegations of unlawful detention brought before the Court, claim was moot); see also Barley v. Alabama Dep't of Mental Health, No. 5:14-CV-01543, 2015 WL 4232728, at *2 (N.D. Ala. Apr. 14, 2015), report and recommendation adopted, No. 5:14-CV-01543, 2015 WL 4232241 (N.D. Ala. July 13, 2015) (holding that, though detainee's previous confinement was unlawful, the subsequent order renewing petitioner's confinement mooted the claim as to prior unlawful confinement).

   As explained above, Petitioner is presently being held in custody because of a misinterpretation of 8 U.S.C. § 1225(a) and 8 U.S.C. § 1226.  Petitioner is not detained because of the automatic stay provision.  Petitioner has not established any concrete or continuing injury related to the automatic stay provision.  Therefore, Petitioner's claims concerning the automatic stay provision are moot.  The Court cannot grant him Petitioner relief on the automatic stay controversy.  Therefore, Petitioner's habeas claim and request for relief related to the automatic stay provision is not justiciable and should be denied.

   Petitioner argues the government's "cessation" of the automatic stay was a strategic shift in legal theory in response to Petitioner's challenge, and that the "underlying issue of the

automatic stay's legality and constitutionality remains a live controversy." Doc. 37 at 11–12. But Petitioner's allegations are conclusory and unsupported. It is correct that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.,* does not make the case moot . . . ." Sec'y of Labor v. Burger King Corp., 955 F.2d 681, 684 (11th Cir. 1992) (citation and quotation marks omitted). Petitioner has not, however, shown that the voluntary cessation rule should apply here. There is no indication that Respondents voluntarily ceased illegal conduct to avoid review. Instead, DHS merely sought reconsideration of the IJ's initial bond determination, which triggered the automatic stay provision. Then, the automatic stay provision "automatically" ceased to have any effect once the BIA decided the appeal. Furthermore, the voluntary cessation rule does not apply "when there is no reasonable expectation that the voluntarily ceased activity will, in fact, actually recur after the termination of the suit." Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla., 382 F.3d 1276, 1283 (11th Cir. 2004). Petitioner has not shown any likelihood that Petitioner will be detained because of the automatic stay provision in the future. Indeed, if this Report and Recommendation is adopted, Petitioner will be released from detention. The only conceivable way the automatic say provision would be triggered is if there was a new bond determination made, based on new facts, Petitioner is ordered detained again, and then DHS seeks review of that determination and invokes the automatic stay provision. Petitioner has failed to show any likelihood that such circumstance shall arise. If those circumstances do arise, Petition may file a new petition challenging the automatic stay provision.

Because Petitioner has established no concrete and continuing injury, his arguments that the automatic stay provision contained in 8 CFR § 1003.19(i)(2) violates due process and is *ultra vires* are moot because his detention is no longer based on the automatic stay provision.

**CONCLUSION**

I conclude Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) based on the facts and arguments currently presented to the Court.  Thus, Petitioner's detention based on 8 U.S.C. § 1225(b)(2) is unlawful.  Any immigration court order which has relied on this misinterpretation to continue to detain Petitioner is contrary to the INA, and therefore, § 2241 relief is proper.  I therefore **RECOMMEND** that that the Court **GRANT in part** the Amended Petition, doc. 15, and **DENY** Respondents' Motion to Dismiss, doc. 28.  I **RECOMMEND** that Respondents should be ordered to release Petitioner subject to the previous bond order, entered July 25, 2025 in the United States Department of Justice Executive Office for Immigration Review at Stewart Immigration Court by IJ Rodger Harris, or if such act is procedurally impossible given the vacatur of that bond order by the BIA, Respondents must release Petitioner without those conditions.  Given my Recommendation, I decline to reach the merits of Petitioner's remaining counts, except as described herein.

Additionally, given the unique circumstances of this case and the issue presented, I **ORDER** any objections to be **filed no later than 3:00 p.m. EST, on November 7, 2025.**  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Petition must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED, REPORTED, and RECOMMENDED**, this 4th day of November, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA