# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

ANTONIO AGUIRRE VILLA, et al.,[1]

  Petitioners,

    v.

WARDEN TONY NORMAND, et al.,

  Respondents.

CIVIL ACTION NOS.: 5:25-cv-89
        5:25-cv-90
        5:25-cv-91
        5:25-cv-97
        5:25-cv-100
        5:25-cv-103
        5:25-cv-104
        5:25-cv-114
        5:25-cv-115
        5:25-cv-117
        5:25-cv-121
        5:25-cv-126
        5:25-cv-130
        5:25-cv-131
        5:25-cv-132
        5:25-cv-133

## ORDER

These consolidated cases are before the Court on petitions for relief under 28 U.S.C. § 2241. Petitioners in the above-captioned cases claim that they were detained in contravention of the Immigration and Nationality Act ("INA") when they were unlawfully detained without a bail hearing under 8 U.S.C.

---

[1] The Consolidation Order erroneously ordered Petitioner Lopez Lizarazo's petition be consolidated with Petitioner Villa's, but as Respondents note, this petition was not included in the caption of that Order. Dkt. No. 47 at 6. Petitioner Lizarazo asserts a separate basis for relief and, therefore, is properly excluded from this Court's Consolidation Order.

§ 1225(b), which requires mandatory detention. Instead, Petitioners argue that 8 U.S.C. § 1226(a) applies, which provides for a discretionary hearing after a detention hearing. The Court consolidated these cases to efficiently resolve the petitions, as the issue of Petitioners' entitlement to a bond hearing is dispositive of each of the cases. The Magistrate Judge entered his Report and Recommendation in Villa v. Normand, 5:25-cv-89 (S.D. Ga. Aug. 29, 2025), before consolidation, dkt. no. 46. In its Consolidation Order, the Court directed Respondents to file one set of objections "with the understanding that the reasoning and ruling in the Report and Recommendation will apply to petitioners in all consolidated cases . . . ." Dkt. No. 47 at 7.

The Magistrate Judge's Report and Recommendation on Petitioner Villa's Amended Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief under 28 U.S.C. § 2241 is now before the Court. The Magistrate Judge recommends the Court grant in part Petitioner's Amended Petition, dkt. no. 15, and deny Respondents' Motion to Dismiss, dkt. no. 28. Both parties filed Objections, dkt. nos. 76, 82.

After an independent and de novo review, the Court **CONCURS** with and **ADOPTS** the November 4, 2025 Report and Recommendation. All Petitioners in the consolidated petitions before the Court shall be granted relief. Additionally, the Court **OVERRULES** all Objections. The Court **GRANTS in part** Petitioner Villa's Amended

Petition and **GRANTS** all other consolidated Petitions on counts relevant to the INA's application to them.  The Court **ORDERS** relief on all consolidated Petitions, as explained in Section II of this Order.  Finally, the Court **DISMISSES** all non-Warden Respondents from these cases.

## I.   Petitioner Villa's Habeas Claims[2]

Villa asserts several claims in his Amended Petition, but the core claim is a request for habeas relief on the ground that he is being unlawfully detained in violation of the INA.  Dkt. No. 15. Neither party disputes the underlying facts leading to Petitioner Villa's detention, which are fully set forth in the Magistrate Judge's Report and Recommendation.  Dkt. No. 46 at 1–3.

In the Report and Recommendation, the Magistrate Judge recommends that the Court grant in part Petitioner's Amended Petition and deny Respondents' Motion to Dismiss.  Dkt. No. 46. The Magistrate Judge determines that the Court has jurisdiction to consider Petitioner Villa's claims despite 8 U.S.C. § 1252(g) and that the Petition should not be dismissed as an improper shotgun pleading.  The Magistrate Judge also determines that Petitioner Villa is being unlawfully detained.  Specifically, the Magistrate Judge determines the plain meaning of the statute demonstrates

---

[2]   In this Order, where the Court states "Petitioner" (singular), the Court is referring to Petitioner Villa.  Likewise, where the Court states "Respondents," the Court is referring to the Respondents in the <u>Villa</u> case.

that 8 U.S.C. § 1226(a) governs Petitioner's detention. The Magistrate Judge rejects Respondents' construction of the relevant statutes as incongruous with the statutes' plain meaning and the statutory scheme. Id. at 12-21. The Magistrate Judge also states that the reasoning in Yajure Hurtado is unpersuasive and notes dozens of district courts have reached the same conclusion. Id. at 21-22. The Magistrate Judge also determines that Petitioner Villa's automatic stay arguments are moot and Petitioner's request for declaratory judgment is duplicative. The Magistrate Judge recommends that the Court order Respondents to release Petitioner subject to the earlier bond order or, if vacatur of the initial bond order made that impossible, then release Petitioner without any conditions. Both parties objected.

## A.   Petitioner Villa's Objections

The operative pleading in this case, as to Petitioner Villa, is captioned "Amended Verified Petition for Writ of Habeas Corpus and Complaint for Verified and Injunctive Relief." Dkt. No. 15. Petitioner Villa asserts a slew of different legal claims and legal theories. While Petitioner Villa's chief claim is a habeas claim seeking release from unlawful detention in violation of the INA, Villa also requests declaratory judgment and asserts claims based on violations of regulations, the Administrative Procedures Act, and various constitutional provisions, among other things.

In the Report and Recommendation, the Magistrate Judge declines to address Petitioner's various claims, aside from the INA claim, because Petitioner is entitled to relief on that claim. Dkt. No. 46. The Magistrate Judge also recommends the Court deny the request for declaratory judgment as duplicative of Petitioner's core habeas claim.

In his Objections, Petitioner Villa challenges the Magistrate Judge's recommendation that the Court deny the request for declaratory judgment. Dkt. No. 76. Petitioner argues that a declaratory judgment is necessary to "prevent ICE [("Immigration and Customs Enforcement")] from re-arresting Petitioner under § 1225(b)(2) or from continuing to apply the same unlawful rationale to others, thereby evading effective judicial review each time by mooting the case through release or transfer before a court can enter a binding declaration." Id. at 1-2. Petitioner claims that the Government's position "has shifted repeatedly throughout this litigation," and that such shifts indicate "precisely the type of 'capable of repetition, yet evading review' scenario that warrants declaratory relief."[3] Id. at 2 (citing Preiser v. Newkirk, 422 U.S. 395, 401-03 (1975)). Petitioner argues the "government's voluntary cessation of the challenged

---

[3] The Court notes that Petitioner Villa has not shown that any aspect of Respondent's conduct will evade review. Petitioner has utilized a habeas petition to successfully seek judicial review here, and there is no indication he cannot avail himself of the same mechanism in the future.

conduct (i.e., release of Petitioner or change in detention rationale) does not render the controversy moot unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Id.

The Court concurs with the Magistrate Judge's recommendation to deny Petitioner Villa's request for declaratory judgment. Petitioner Villa's request for declaratory judgment has been a moving target. In the Petition, Petitioner Villa seeks a declaratory judgment that he was not an "applicant for admission" or "arriving alien" subject to mandatory detention under 8 U.S.C. § 1225(b) and that his detention is governed solely by 8 U.S.C. § 1226(a). Dkt. No. 15 at 41. But Petitioner also requests "a declaratory judgment that the agency may not arbitrarily revoke prosecutorial discretion and administrative closure previously granted . . . ." Id. at 71. Elsewhere in the briefing, Petitioner requests "a declaration that the government's actions, including its reliance on the automatic stay, were unlawful" and a declaration that "[Petitioner Villa] is not and cannot be detained pursuant to § 1225(b)(2), and since Respondents now claim that the sole reason for his current detention is § 1225(b)(2), then Petitioner can be immediately released without bond." Dkt. No. 37 at 12, 35.

To the extent Petitioner Villa is requesting a declaratory judgment that his detention is governed by § 1226(a) and not

§ 1225(b), that request is plainly duplicative of Petitioner's core habeas claim and should be denied. To the extent Petitioner Villa is asking for a declaratory judgment related to the legality of the automatic stay provision, Villa's claim related to the automatic stay provision are moot, and it would be improper to issue a declaratory judgment on that claim. Dkt. No. 46 at 23—26.

To the extent Petitioner Villa seeks a declaratory judgment in the form of prospective relief (e.g., a declaratory judgment that the Department of Homeland Security ("DHS") may not revoke prosecutorial discretion in the future, ICE may not detain "others" under § 1225(b)(2) in the future, etc.), the Court denies that request. Petitioner has not shown that any claim for prospective declaratory judgment is ripe for adjudication because he has not shown any actual or imminent injury that will not be addressed by the grant of relief on the habeas claim. See City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983) (Where a plaintiff seeks prospective relief, he must demonstrate a "real and immediate threat" of future injury.); Elend v. Basham, 471 F.3d 1199, 1205 (11th Cir. 2006) ("If an action for prospective relief is not ripe because the factual predicate for the injury has not fully materialized, then it generally will not contain a concrete injury requisite for standing."). A plaintiff must show an "imminent" injury to obtain prospective relief. See 31 Foster Children v.

7

Bush, 329 F.3d 1255, 1266–67 (11th Cir. 2003) (noting that standing for declaratory or injunctive relief requires that future injury "proceed with a high degree of immediacy"); Bowen v. First Family Fin. Servs., 233 F.3d 1331, 1340 (11th Cir. 2000) (observing that a "perhaps or maybe chance" of an injury occurring is not enough for standing).

Petitioner Villa has not alleged that he will face a real and immediate threat of re-detention on the same basis he has been detained up until now.   Instead, Petitioner merely notes that "ICE's policy (including the July 2025 memo) remains in effect," that Yajure Hurtado also remains in effect, and that there is "no binding assurance that Petitioner will not again be detained under § 1225(b)(2) or that the government will not reapply the same misinterpretation in the future." Dkt. No. 76 at 2.  Petitioner's arguments rest solely on the prior exposure to illegal conduct. Petitioner has not supported his claim of fear of re-detention, and he has not shown any real and imminent threat of harm.   For these reasons, and for the reasons stated in the Report and Recommendation, the Court **DENIES** Petitioner Villa's claim for declaratory judgment.

### B.  Respondents' Objections

Respondents assert six Objections against adoption of the Magistrate Judge's Report and Recommendation: (1) the Report and Recommendation contains errors in its findings of fact; (2) the

Warden is the only proper Respondent; (3) this Court lacks jurisdiction over the Amended Petition under 8 U.S.C. § 1252(g); (4) the Amended Petition is a shotgun pleading; (5) Petitioner's detention is governed by 8 U.S.C. § 1225(b)(2)(A); and (6) this Court should not order immediate release. The Court overrules Respondents' Objections for the following reasons.

### 1. Alleged errors of fact.

Respondents first assert that the Magistrate Judge errs in stating that the immigration judge ("IJ") determined that Petitioner Villa's detention was governed by 8 U.S.C. § 1226(a) and not § 1225(b)(2)(A). See Dkt. No. 82 at 5 (citing Dkt. No. 56 at 3). Respondents point to the following portion of the Report and Recommendation: "[Petitioner] contends that his detention is governed by § 1226(a) and not § 1225(b)(2)(A), as the IJ concluded during the custody redetermination." Dkt. No. 46 at 2.

First, the Magistrate Judge was merely reviewing Petitioner Villa's characterization of his own allegations, not claiming to state facts. Additionally, the Magistrate Judge is clearly referencing the IJ's first bond redetermination. Respondents have not identified any error in this portion of the Report and Recommendation.

Next, Respondents challenge the Magistrate Judge's characterization of an exchange occurring during oral argument. At oral argument, the Magistrate Judge asked Respondents' counsel

to identify who would be subject to discretionary detention under § 1226(a) if Respondents' construction of the INA were the correct construction. The Magistrate Judge states in the Report and Recommendation that, since Respondents could not identify any category of individuals who would be subject to § 1226(a), their interpretation of the relevant statutes would largely nullify § 1226(a).

In their Objections, Respondents correctly state that counsel did identify one group of individuals to whom § 1226(a) could apply under Respondents' construction of the statute: visa overstays. Dkt. No. 82 at 6. But this is, at most, an oversight in the Report and Recommendation regarding a statement made at oral argument, not an erroneous factual finding. Moreover, the Magistrate Judge follows his inquiry with another: whether a visa overstay situation was materially different from individuals in Villa's circumstances. Counsel was not able to identify any material distinctions. In any event, § 1226(a) is plainly not intended to address only the limited circumstances of a visa overstay, as the Magistrate Judge explains in the rest of his Report and Recommendation. Ultimately, Respondents have not identified any factual error in this portion of the Report and Recommendation, especially not one that would materially impact the analysis contained in the Report and Recommendation.

####    2.    *The Court has jurisdiction.*

Respondents have argued throughout this action that the Court lacks jurisdiction under 8 U.S.C. § 1252(g).  The Magistrate Judge rejects this argument, concluding that Petitioner's habeas claim is an attack on the underlying bases for his detention and not a claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . ."  Dkt. No. 46 at 4–5.  Respondents object to the Magistrate Judge's conclusion.

Although the Magistrate Judge provided a thorough jurisdictional analysis, Respondents complain that the Magistrate Judge failed to address Gupta v. McGahey, 709 F.3d 1062 (11th Cir. 2013), and Alvarez v. U.S. Immigr. & Customs Enf't, 818 F.3d 1194, 1203 (11th Cir. 2016).  The Court has reviewed these cases and finds these cases are not analogous.  The two cases analyze Bivens claims, not habeas claims.  Respondents argue "there is no dispute that the Eleventh Circuit's analysis of § 1252(g) applies equally to challenges under 28 U.S.C. § 2241," dkt. no. 82 at 7, but Respondents provide no support for that notion.  Ultimately, the cases do not demonstrate that this Court lacks jurisdiction.

The decision in Alvarez dealt with distinctly different facts.  Alvarez, a Cuban national, was serving the last few weeks of a federal prison sentence when ICE lodged a detainer against him.  Alvarez, 818 F.3d at 1196.  Alvarez was ordered removed,

11

even though ICE does not effectuate removals to Cuba. Alvarez remained in ICE custody for longer than the 90-day statutory period for removal under 8 U.S.C. § 1231(a)(1)(A). After his release, Alvarez sued under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). The Eleventh Circuit concluded that it did not have subject matter jurisdiction to review the claim.

The court in <u>Alvarez</u> acknowledged that § 1252(g) "applies only to three discrete actions," namely, the "'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" <u>Alvarez</u>, 818 F.3d at 1202 (quoting 8 U.S.C. § 1252(g)). Based on the very specific facts of the case, the <u>Alvarez</u> court determined that some of Alvarez's claims, including the decision to lodge a detainer, arose from the decision to initiate removal proceedings and execute removal orders. However, the <u>Alvarez</u> court also concluded that Alvarez's claim that ICE had no statutory basis on which to detain him did not arise from the decision to execute removal and, therefore, § 1252(g) did not strip the court of jurisdiction to consider that claim. <u>Id.</u> at 1205.

<u>Alvarez</u> does not demonstrate that § 1252(g) strips this Court of jurisdiction to adjudicate Petitioners' habeas claims. The present cases come before the Court on § 2241 petitions and not <u>Bivens</u> claims, and they are not direct challenges to removal proceedings. These Petitioners are not subject to a removal order.

As the Magistrate Judge determines, Petitioner Villa and others like him seek to challenge the underlying legal bases of their detention.  Dkt. No. 46 at 6.  These Petitioners do not challenge any decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders.

Respondents' reliance on Gupta, 709 F.3d at 1063, is similarly unconvincing.  In Gupta, the plaintiff asserted Bivens claims based on the theory that ICE agents violated the Fourth and Fifth Amendments by initiating removal proceedings and arresting and detaining Gupta.  Id.  The court concluded that "[e]ach of Gupta's claims allege, as his direct injury, an action taken to secure him and prevent the perceived threat he posed . . . while he awaited a deportation hearing."  Id. at 1065.  Unlike these Petitioners, Gupta did not challenge any legal bases for his detention in a habeas petition.  Instead, Gupta claimed generally under Bivens that all ICE agents' actions related to the initiation of removal proceedings violated his constitutional rights.  The decision in Gupta does not demonstrate that § 1252(g) strips this Court of jurisdiction to adjudicate Petitioners' habeas claims.

Ultimately, the Court concurs with the Magistrate Judge's analysis and with the other courts that have considered the issue. Section 1252(g) does not strip this Court of jurisdiction to adjudicate these Petitioners' habeas claims.  Respondents have not

pointed to any authority that demonstrates jurisdiction is barred
here.

### 3.    *Petitioner Villa's Petition should not be dismissed as an improper shotgun pleading.*

In the Motion to Dismiss, Respondents argue that Petitioner
Villa's Amended Petition should be dismissed as an improper shotgun
pleading.    The Magistrate Judge rejects that argument and
recommends denial of that portion of the Motion to Dismiss.
Dkt. No. 46.  In their Objections, Respondents argue the Magistrate
Judge's conclusion is wrong.  Dkt. No. 82 at 10-12.

The Eleventh Circuit has noted that one hallmark of a shotgun
pleading is when it "contain[s] multiple counts where each count
adopts the allegations of all preceding counts, causing each
successive count to carry all that came before and the last count
to be a combination of the entire complaint."  Weiland v. Palm
Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1321-22 (11th Cir.
2015).    However, this is only one indicator of an improper
pleading.    At their core, shotgun pleadings fail to place
defendants on notice of what a claim is and the grounds upon which
it rests.  Boatman v. Town of Oakland, 76 F.3d 341, 343 n.6 (11th
Cir. 1996); Sledge v. Goodyear Dunlop Tires N. Am., Ltd., 275 F.3d
1014, 1018 n.8 (11th Cir. 2001) ("The failure of the plaintiff to
identify his claims with sufficient clarity to enable the defendant
to frame a [responsive] pleading constitutes shotgun pleading.").

Here, Respondents have not shown that Petitioner Villa's Amended Petition must be dismissed as an improper shotgun pleading. Respondents have not argued that the nature of the pleading prevented them from understanding the relevant facts or the core request for habeas relief. Although the Amended Petition is complex and somewhat convoluted, Respondents were fully able to understand and respond to the Amended Petition. Furthermore, even if the Amended Petition is a shotgun pleading, dismissal would not be required. Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds."). Rather than delay resolution of this matter, the Magistrate Judge correctly concludes that Count Two in the Amended Petition sufficiently states a habeas claim, including having adequate facts and providing sufficient notice to the Respondents. Dkt. No. 46 at 8. The Court **OVERRULES** Respondents' Objection to the sufficiency of the pleading.

### 4.    *Section 1226(a) governs Villa's detention.*

In the Report and Recommendation, the Magistrate Judge concludes that Petitioner Villa's detention is governed by § 1226(a), not § 1225(g)(2)(A). Dkt. No. 46 at 8-23. The Magistrate Judge considers the plain language of the statutes,

their titles, the statutory framework, recent amendments to relevant statutes, implementing regulations, Respondents' proposed construction of the relevant statutes, and numerous recent district court decisions considering the same issue.  Id.

Respondents make essentially three Objections to the Magistrate Judge's conclusion and analysis.  First, Respondents argue that the plain meaning of § 1225(b)(2)(A) demonstrates that it applies to Petitioner.  Respondents point to a handful of non-binding decisions they contend support their position.  Second, Respondents argue that the Magistrate Judge's consideration of legislative history and the congressional record in his analysis of the cannon against surplusage was erroneous because the Magistrate Judge did not first find the statute ambiguous or unclear.  Dkt. No. 82 at 17 (citing Garcia v. Vanguard Car Rental USA, Inc., 540 F.3d 1242, 1247 (11th Cir. 2008) (stating that "legislative history cannot be used to contradict unambiguous statutory text or to read an ambiguity into a statute which is otherwise clear on its face.")).  Finally, Respondents claim the Magistrate Judge failed to explain his reasons for concluding that Yajure Hurtado is unpersuasive.  The Court addresses each contention in turn.

Respondents first object to the Magistrate Judge's analysis of the plain language of the statutes.  On this point, Respondents make the same arguments they made in their Answer and Motion to

Dismiss and during oral argument before the Magistrate Judge.[4] After conducting an independent and de novo review, the Court concludes that the Magistrate Judge's analysis of the plain meaning of the statute is thorough and well reasoned. Respondents plainly disagree with the analysis and conclusion, but Respondents have not identified any flaws or errors in that analysis. Under the plain language of the relevant statutes, the Court concludes that Petitioner Villa's detention is governed by § 1226(a), not § 1225(g)(2)(A).

Respondents point to five non-controlling decisions from other district courts that they contend undermine the Magistrate Judge's analysis and conclusion on the plain meaning of the statutes: Sandoval v. Acuna, No. 6:25-cv-1467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); Rojas v. Olson, No. 25-cv1437, 2025 WL

---

[4] Respondents challenge the Magistrate Judge's "mistaken" determination that § 1226(a) is a catchall provision. Dkt. No. 82 at 14 n.4. There is no indication that the Magistrate Judge's reference to § 1226(a) as a "catchall provision" was a mistake. Other courts considering similar challenges have also characterized § 1226(a) as a catchall provision. See Sandoval, 2025 WL 3048926, at *4 ("Section 1226 therefore operates as a catchall provision that 'generally governs the process of arresting and detaining . . . aliens pending their removal.'"); Pizarro Reyes v. Raycraft, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025); Barrera v. Tindall, No. 25-cv-541, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025). In Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), the United States Supreme Court explained that § 1226 "creates a default rule" that "applies to aliens already present in the United States." Respondents are correct that some courts have also stated that § 1225(b)(2) serves as a catchall provision for applicants for admission who are not covered by § 1225(b)(1). See Jennings, 283 U.S. at 287. Ultimately, the characterization of § 1226(a) as a "default" or a "catchall" provision is inconsequential. Section 1226(a) applies to the consolidated Petitioners and, therefore, those individuals are entitled to bond hearings.

3033967 (E.D. Wis. Oct. 30, 2025); <u>Vargas Lopez v. Trump</u>, __ F. Supp. 3d __, No. 8:25-cv-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); <u>Chavez v. Noem</u>, No. 3:25-cv-02325, __ F. Supp. 3d __, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025); and <u>Pena v. Hyde</u>, No. 25-cv-11983, 2025 WL 2108913, at *2 (D. Mass. July 28, 2025). Petitioner argues in response that these decisions are either wrong or distinguishable. <u>See</u> Dkt. No. 83 at 20.

Respondents contend that <u>Sandoval</u> supports their argument that any alien physically present in the United States who has not been admitted is an "applicant for admission," regardless of how long the individual has been in the country or whether they intended to apply or enter properly. <u>See</u> Dkt. No. 82 at 13 (quoting <u>Sandoval</u>, 2025 WL 3048926). <u>Sandoval</u> does support Respondents' position, but the analysis in that case is not persuasive. In <u>Sandoval</u>, the court did not analyze the title of § 1225, which intentionally refers to "arriving" aliens, the overall scheme of § 1225, or the implementing regulations. <u>Sandoval</u> also fails to address the significance of the phrase "seeking admission" in the relevant statute. As the Magistrate Judge explains, "seeking admission" "implies action—something that is currently occurring, and . . . would most logically occur at the border upon inspection." Dkt. No. 46 at 14. Generally, <u>Sandoval</u> did not address several of the issues the Magistrate Judge addresses in

the Report and Recommendation and, as a result, the decision is not persuasive.

The other cases Respondents cite are either unpersuasive or distinguishable. In Rojas, the court engaged in a more thorough statutory construction than in Sandoval but failed to adequately consider several important concerns. 2025 WL 3033967. The Rojas court gave little attention to the meaning of the term "seeking," the title of relevant statutes, the statutory framework, the passage of subsequent amendments, and implementing regulations. Therefore, I do not find the analysis in Rojas persuasive. Two of Respondents other cases—Chavez, 2025 WL 2730228, and Pena, 2025 WL 2108913, (which was decided well before Yajure Hurtado)—are unpersuasive for the same reasons. And Lopez, 2025 WL 2780351, is factually distinguishable. The Lopez court concluded that the petitioner failed to provide the court with documents that would show he was eligible for release under § 1226(a). Ultimately, none of the cases Respondents cite present compelling reasons to conclude that Petitioner Villa is subject to mandatory detention under § 1225.

Next, Respondents argue the Magistrate Judge erred by analyzing legislative history without first finding the statutory language ambiguous. See Dkt. No. 82 at 17 ("The Report and Recommendation made no finding that § 1225(b)(2)(A)—or any other part of the statutory scheme—was ambiguous. Therefore, the

discussion of legislative history should be disregarded."). Respondents' Objection is unconvincing. The Magistrate Judge did not analyze legislative history to address an ambiguity in the statutory scheme. Instead, the Magistrate Judge considers the parties' competing statutory construction arguments and notes that, if Respondents' argument were the correct one, then certain portions of the statutory framework would become superfluous. Regardless, the Court would reach the same conclusion without consideration of this portion of the Report and Recommendation based on analysis of the plain language of § 1225. This portion of Respondents' Objections does not demonstrate that the Court should not adopt the Magistrate Judge's recommendation.

Respondents' last argument on statutory construction is that the Magistrate Judge failed to adequately explain why Yajure Hurtado is unpersuasive. Respondents state that the Magistrate Judge merely cites other district courts that have rejected the Board of Immigration Appeals' ("BIA") reasoning in Yajure Hurtado and fails to elucidate any specifics about its purported flaws.

Respondents' challenge is unconvincing. The Magistrate Judge correctly concludes that there is no need to consider Yajure Hurtado or to defer to the BIA under Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024). Dkt. No. 46 at 21. Respondents do not dispute this conclusion. The Magistrate Judge then explains that "[t]he BIA's decision in Yajure Hurtado 'conflicts with the

implementing regulation for § 1225(b)' by adopting a more expansive interpretation of § 1225(b) than the regulation." Dkt. No. 46 at 21.

Next, the Magistrate Judge explains that myriad district court cases have also concluded that <u>Yajure Hurtado</u> does not provide a convincing analysis of the issue. The Magistrate Judge expresses agreement with courts that rejected the BIA's novel interpretation that any alien present in the United States is "seeking admission." <u>Id.</u> at 21-22. The Magistrate Judge finally notes that <u>Yajure Hurtado</u> "ignores § 1226 and fundamental canons of statutory interpretation that require consideration of the relevant context within which the statute exists." <u>Id.</u> at 21. In their Objections, Respondents failed to explain why <u>Yajure Hurtado</u> is persuasive and what, specifically, the Magistrate Judge failed to recognize within the BIA's analysis. Ultimately, the Magistrate Judge explains that the Court is not required to defer to the BIA or consider <u>Yajure Hurtado</u>, but even so, provided adequate reasons for treating <u>Yajure Hurtado</u> as unpersuasive. Respondents' Objection on this point is unconvincing.

For these reasons, I **OVERRULE** Respondents' arguments regarding the Magistrate Judge's conclusion on the applicability of § 1225(b)(2)(A).

**5.    *Respondents' Objections to immediate release.***

The Magistrate Judge recommends that the Court order Respondents to release Petitioner Villa subject to the conditions stated in the IJ's July 25, 2025 bond order or, "if such act is procedurally impossible given the vacatur of that bond order," then Villa should be released without conditions. Dkt. No. 46 at 27. Respondents object, arguing that if the Court adopts the Report and Recommendation, Petitioner Villa should be released subject to the terms of the previous bond order or Respondents should have to provide another bond hearing.[5] Dkt. No. 82 at 19. As such, Respondents ask the Court to not order the "second alternative for relief" (i.e., release without conditions).

The Magistrate Judge ostensibly recommends release of Petitioner Villa without any conditions in anticipation of the possibility that Respondents would view release on the prior bond conditions a procedural impossibility. Respondents' Objections make it clear that is not the case. Respondents expressly propose that Petitioner Villa be released subject to the July 25, 2025

---

[5]  Respondents have not stated any need to conduct an additional bond hearing for Petitioner Villa. Specifically, Respondents have not identified any change in factual circumstances since the initial bond hearing that would warrant a new bond hearing now. Therefore, on this record, the Court will not require (or permit) Respondents to conduct an additional bond hearing for Petitioner Villa. New facts in the future might warrant a bond hearing or redetermination for Petitioner Villa in the future under the relevant stator provisions and regulations. But Petitioner Villa shall not be subject to mandatory detention under § 1225 unless he takes the steps necessary to become an applicant seeking admission to the United States.

bond order if the Court adopts the Report and Recommendation. Therefore, the Court will not require Respondents to release Petitioner Villa without any conditions.

For these reasons, the Court **ORDERS** Respondents to release Petitioner Villa subject to the previous bond order, entered July 25, 2025, in the United States Department of Justice Executive Office for Immigration Review at Stewart Immigration Court by IJ Rodger Harris and shall do so within three (3) days of this Order.

## II.  Relief Granted to Consolidated Petitioners

As explained in the Court's Consolidation Order, now that the Court has adopted the Magistrate Judge's Recommendation, the Court's Order renders moot all pending motions for temporary restraining order, for preliminary injunction, and for other interim relief motions that have been filed in the consolidated cases. Dkt. No. 47 at 7. Given the core legal issue in all the consolidated cases, relief for all Petitioners is warranted. Relief differs depending on the petitioner's specific circumstances. Some of the consolidated Petitioners were previously granted bond, but the bond was later vacated or reversed. Other Petitioners have not yet received any bond hearing. Therefore, the following relief is appropriate, as it pertains to the circumstances of these two categories of consolidated Petitioners:

**(1)** **Petitioners who were previously granted bond.** If the Petitioner previously received a bond hearing and the IJ granted release subject to conditions at or following that hearing and that grant of bond was later vacated, reversed, or stayed based on Yajure Hurtado or similar reasoning, then Respondents shall release that Petitioner subject to the bond conditions previously set by the IJ within three (3) days of this Order. In some instances, the IJ concluded that § 1225(b)(2)(A) applied but provided a contingent set of bond conditions if § 1226(a) applied. For those Petitioners, Respondents shall release them subject to the contingent bond conditions within three (3) days of this Order.

**(2)** **Petitioners who have been detained without a bond hearing.** If the Petitioner was detained under § 1225(b)(2)(A) and never received a bond hearing because of the BIA's decision in Yajure Hurtado or similar reasoning, but would be subject to discretionary bond under § 1226(a) based on the conclusions in this Order, then Respondents shall provide that Petitioner a bond hearing, as required by § 1226(a) within three (3) days, and the Respondents shall comply with the IJ's conclusion in that bond hearing.

## III. Non-Warden Respondents Are Dismissed

In their Objections, Respondents maintain that the Court should dismiss the non-Warden Respondents even though the Magistrate Judge does not make a recommendation about the dismissal

of those named Respondents. See Dkt. No. 82 at 6 (arguing that, "throughout the pendency of this petition, Respondents have consistently maintained that Warden Tony Normand is the only proper respondent.").

As background, Petitioner Villa named the following individuals as Respondents: Normand (Warden of the Folkston Detention Center); Lyons (Acting Director of ICE); Sterling (Field Office Director ICE Atlanta); and Noem (Secretary of Homeland Security).[6] Dkt. No. 15. The Magistrate Judge initially sua sponte recommended dismissal of all Respondents except for Normand, noting that the default rule in habeas cases is that the warden of the facility where a petitioner is held is the proper respondent. Dkt. No. 10. Petitioner objected to that recommendation, arguing that the other Respondents needed to remain in the case because Petitioner requested declaratory and preliminary injunctive relief. In light of those arguments, and the posture of the case at the time, the Magistrate Judge vacated his recommendation that the Court dismiss the non-Warden Respondents. Dkt. No. 19.

In their Motion to Dismiss, Respondents argue the Warden is the only proper Respondent, noting their agreement with the

---

[6] Petitioner named Pamela Bondi, Attorney General of the United States, as a Respondent in the initial Petition but did not name Bondi in the Amended Petition.

Magistrate Judge's now vacated Report and Recommendation. Dkt. No. 16 at 1 n.1; Dkt. No. 28 at 1 n.1. In their Objections to the November 4, 2025 Report and Recommendation, Respondents argue again that the Warden is the only proper Respondent. Dkt. No. 82 at 6-7. Petitioner filed a Response to Respondents' Objections, stating again that all Respondents should remain in the case. Dkt. No. 83 at 2-3.

At this point, the Warden is the only proper Respondent. Petitioner has withdrawn any request for interim injunctive relief. The Magistrate Judge recommends that the Court grant Petitioner's request for habeas relief and deny Petitioner's request for declaratory judgment, which the Court adopts in this Order. It is clear that Warden Normand can provide Petitioner Villa (and the other consolidated Petitioners) with the habeas relief requested.[7] Although the Magistrate Judge vacated his recommendation for the dismissal of the non-Warden Respondents, it is appropriate to dismiss those Respondents now. The default rule is that the Warden is the only proper respondent, and, in this

---

[7] Petitioner suggests Warden Normand might lack the authority to effectuate Petitioner's release because the Folkston Detention Center is a contract detention facility. Dkt. No. 83 at 2-3. Respondents have repeatedly represented that Warden Normand is the only proper Respondent and have not, at any time, suggested that Normand lacks the authority to effectuate Petitioner's release. On this record, Petitioner has not demonstrated that Warden Normand is unable to effectuate the relief provided in this Order, such that other Respondents need to remain in this case. The Court presumes, on the representations of Warden Normand's counsel, that Normand can and will provide the relief ordered by the Court.

case, the Warden can provide the full scope of habeas relief. Therefore, I **DISMISS** all non-Warden Respondents from this action.

**CONCLUSION**

Accordingly, the Court **OVERRULES** all Objections in <u>Villa v. Normand</u>, 5:25-cv-089, as applied to that case and as applied to all consolidated cases.   The Court **GRANTS in part** Petitioner Villa's Amended Petition.   The Court **GRANTS** all consolidated Petitions on counts relevant to the INA's application to them, and those Petitioners shall be released or provided a bond hearing, as explained above in Section II.   The effect of this ruling is that no Petitioner named in these consolidated cases shall be subject to § 1225 mandatory detention, unless there is a change in material fact that would subject the Petitioner to that sort of the detention (e.g., the Petitioner is removed from the United States and attempts to apply for admission at a port of entry.)   Finally, the Court **DISMISSES** all non-Warden Respondents from these cases.

**SO ORDERED**, this ___14___ day of November, 2025.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA